Case number 319-0275, Kevin Kamin, appellant slash cross appellee versus Country Casualty Insurance Company, appellee slash cross appellant. Yes, your honor may plead the court. My name is Frank Delmedico. I have the pleasure of representing Mr. Kevin Kamin in this matter. My arguments going to be brief. Mr. Kamin appealed a ruling of the trial court where in the unreasonable vexatious failure to pay claim was dismissed and as part of the second amended complaint and count to Mr. Kamin use section 154.6 of the insurance code to put forward his basis for the unreasonable vexatious failure to pay claim, which involves unfair claim practices. It's our position, the fifth district court, excuse me, the fifth district came down in 2016 under the Zagorski opinion stating that you may use the unfair claims practices section of the code as a basis to allege that the insurer is not complying with the law or handling the claim fairly. And the language in that case, I think is indicative of what's here is that obviously it's not dispositive the unfair claims practices, but it's something that can be looked at to evaluate whether or not the insurer handled the claim appropriately. The basis for Mr. Kamin's unfair, excuse me, vexatious failure to pay claim involved two, mainly three things. One, that they did not open an avenue of coverage under under dwelling. Secondly, they altered his list that he spent hours and worked on with agents of the insurance company. You know, they went as far as to at one point in time claim that Mr. Kamin did not come up with actual values when he worked hand in hand with the insurer and coming up with with the values for the property. But the main thing is we believe that this should be remanded and that there should be proceedings consistent with count to that count to should not have been dismissed by the trial court. What was the reasoning for the dismissal. It's my understanding is that we didn't allege it. I mean by Judge Landon it was simply, we didn't make the allegations for a section 155 and that my understanding again was that we could not utilize section 154.6 as a basis. Well, is there any, I thought it was that you failed to factfully you failed to factfully you just had conclusions. Well, with regard to count one, we incorporate the. Well, obviously count ones and corporate and count to, but with regard to the allegations we attached an exhibit D which was a letter which was factual explaining that to Mr. I believe he was the in charge of the, the overall. How would I say this claims handling, and my client put forward in that letter that here are my problems you guys aren't opening up this avenue of of coverage so I mean I think we did plead facts we attached exhibits to that effect and letters. And so far as the facts. And then exhibit D. So what was your understanding of the basis for the trial judge dismissal. We didn't allege it, we didn't. Plain and simple we didn't have the allegations to substantiate a section 155 or move forward on a section 155. That's my understanding. Thank you. I have nothing further your honor on on the section 155. Okay, so you're, you're resting at this point. Yes, I'm that argument. Correct. I'm not my appeal. Correct. I'm Mr came into appeal for 155. Correct. Mr Kitzinger. Your turn on your speaker. Thank you, Justice. Thank you, Justice. May it please the court, counsel, my name is Stan Kitzinger and I represent the defendant appellee cross appellate country casualty insurance company. There are three issues I'll address today. The first is that the circuit courts dismissal of plaintiffs one section 155 claim was proper to that the circuit court aired when it failed to enter JNLV or order a new trial, and three, the plaintiffs favor provide the jury with evidence of his damages requires that the judgment be remitted to nominal damages of $1. If appeals the dismissal of count to to a second amended complaint, seeking damages under section 155 of the insurance code that count was dismissed as an improperly sought relief under section 154.5 of the insurance code. And more importantly, as you just noted, and the trial court noted that the second amended complaint consisted of conclusory statements and not fax is required by our code of civil procedure. Now count to explicitly allege that country engaged improper claims practices by violating section 154.5 of the insurance code, which plaintiff in his briefs to this court has acknowledged that he cannot do, and it that it's a statute that confers upon him, no private cause of action on page 362 of the record, where the second minute complaint count to can be found plaintiff recites a variety of claims or things that generically could constitute improper claims practices under section 154.5. But the problem is, as this court has already noted, and the trial court noted he fails to ledge any facts that actually those any of those improper claims practices actually occurred in this case. And even incorporating the allegations of count one into count two is, which is essentially the difference between the first amendment complaint and the second amendment complaint doesn't cure that defect count one simply sets forth the cause of action for breach of contract and nothing more. There are simply no facts that support the claim that country's handling of plaintiff's claim was unreasonable or vexatious. In fact, I would suggest that plaintiff tacitly admits this, that his complaint is insufficient in his briefs to this court, when he spends much of his time, citing to the trial testimony in support of his claim that country's conduct was unreasonable and vexatious. The problem with this is that count two is dismissed pursuant to emotion brought under section two dash 615 of the code of civil procedure, because it failed to allege sufficient facts and that's simply a deficiency that can't be cured by reference to trial testimony, we have to the motion took the complaint as alleged not with all these other things that may have occurred later. I might also point out that plaintiff has never sought leave to amend count to or move to conform the pleadings to the proof at the close of the evidence. I'll also suggest that this entire exercise is nothing more than plaintiff tilting at windmills. This court has the authority to affirm the dismissal of count two on other grounds, other than plaintiff's failure to plead it properly. In this case, but based on the testimony and evidence, given a trial plaintiff could never prevail on a claim under 155 even were he given an opportunity to do so. The Supreme Court in golden rule versus Schwartz stated that the rule that if there is a bona fide dispute as the coverage section 155 sanctions are simply inappropriate. And in this case, the evidence is clear that at a bare minimum, there's a bona fide dispute over plaintiff's right to recover under the policy. Now this brings me to my second issue that the trial court committed an error when it denied country's motion for judgment, not withstanding the verdict, or for a new trial. This court's review of the denial of country's motion for judgment not withstanding the verdict is de novo, so no deference should be afforded to the trial court's decision on that issue. J and O V is warranted when all the evidence when viewed in its aspect most favorable to the opponent. So overwhelmingly favors the move on that no contrary verdict, based on that evidence could ever stand a new trial, on the other hand, and these two Now it's hard to imagine a case that requires entry of J and O V or a new trial more than this one. This case was a suit for breach of contract, breach of a contract of insurance arising out of a fire in a barn or auxiliary private structure on the plaintiff's property. There's no dispute and no one can test contests that the policy contains a what's called a concealment and fraud provision that provides that the policy itself does not provide coverage. If the any insured and that's plaintiff or his wife because she was listed as a named insured on the policy one intentionally concealed or misrepresented any material factor circumstance to engage in fraudulent conduct or three made false statements related to this insurance. The record in this case could not be more clear that plaintiff breached these provisions, not once but many times and plaintiff actually admitted that during the trial. For example, there are two glaring undisputed instances of this that I'll address for the court. The first one is when plaintiff admitted that the day after the fire, he met with Tom Willie from country country casualty and Mr Willie told the plaintiff, quote, if you use the barn in your business, the barn is not going to be covered. That's found the report of proceedings that page 289 plaintiff also been in that same exchange that Mr Willie told him that any of his work tools or work equipment supplies would be subject to an internal policy limitation of $2,500. The plaintiff admitted that he received a letter from country four days later, that's found it exhibits pages 4950 that the same information was communicated to the plaintiff by in writing. Mr came in the plane if admitted a trial that in response to Mr Willie statements that the barn isn't covered but she's your business and the letter that confirmed that fact that plaintiff told country. I didn't use the barn in my business not an issue. He again reiterated that statement during the trial. Plaintiff also acknowledged that in reliance upon the statement that he did not use the barn in the in his business country casualty issue to check to him for the policy limit for the auxiliary private structure of $21,350 and 70 cents. The problem with this is that we know without question that the barn that the statement the barn wasn't used in the fire, excuse me wasn't used in his business is a false statement and misrepresentation. The plaintiff himself admitted that in his tax files will federal and state, he depreciated and wrote off the barn and all utilities for the barn as a business expense as something he used in his business. Now, may I interrupt you, of course. What was the $21,000 check that was sent to the insurer. What did that represent. That was the caught the value of the barn. So, the value of the barn was well in excess of the 21,000. So there was no need to determine replacement costs and then depreciate it so there's a special line of coverage for what's called auxiliary private structures in other words, things other than the primary residents that are not connected to the home like a detached garage or in this case a barn, and the policy limit was the 21,350 and that's what country paid right away. No. If the barn was used, arguably 100% of the business, would you be owing any coverage or does the contract coverage required the 21,000 be paid the contract the, the limitation on the auxiliary private structures explicitly states that if the auxiliary it's not, sorry, the hazards of working at home. It's not, it's not covered at all. So it's a completely excluded from coverage. So this was a gratuitous payment by country companies. No, the payment was made in reliance upon Mr payment statements. The barn was not using his business in other words country. Okay, believed it. He made a claim, he made a representation country said fine we believe you, and issued the check. But we know that that statement wasn't true, because he depreciated and deducted it on his taxes as a business expense. They first tried to justify that or explain it by stating that, you know, my wife did this and I didn't know anything about it. But Mr came in later admitted after he separated from his wife, Christine, that he continued to deduct the barn and the utilities to the barn as a business expense. Yes, very answer. All five of those special interrogatory regarding this issue are in the negative and there was no intentional concealment intentional misrepresentation of material facts. Maybe, maybe that, you know, but you wanted a jury to have to find that this had happened and they specifically entered all five did not. That's correct. How do we overcome that, you know, these, your interrogatories, and they specifically found after hearing all the same evidence that it wasn't material wasn't intention. Any, you know, any misrepresentation, what have you. No intention to conceal. I don't know how, you know, even, even though you say he admitted that, you know, he had to use this for depreciation in the jury found that maybe that is true but then it wasn't an intentional act to defraud country companies. And the problem that judges is Susie justice is that the point of motions for JV and a new trial, and an appeal to this forum are supposed to correct errors by a jury, and I understand that the standard is high. But in this case, you know, I mean if we simply said well the jury decided it and therefore, that's it, there's no remedy beyond that. If, if this court or the trial court had found that, based on the evidence that the, there's no verdict that could stand. In other words, if there are usually, you know, they don't have a special interrogatory situation. So, you know, there seems to be some more wiggle room, what have you, for lack of a better term. It seems that, you know, on these specific issues that, you know, they, they made a pretty clear statement in five circumstances about this, this very issue itself. Well, the problem with that is the evidence is completely overwhelmingly to the contrary, that there's no question in fact, Judge Holland, ultimately found in his post trial order he said, there's no question, because he remitted the value of the barn that 21,350 because the Judge Holland said the evidence is completely clear. And as a matter of law, I am finding that the barn was in fact used in Mr. Kamen's business. And the problem with that is that there's no dispute that Mr. Kamen has said, the barn was not used in my business he told country that from day one he told the jurors that, and then admitted that he did deduct it as a business expense. But he did, as the post trial order by Judge Holland indicates, he did admit in Mrs Kamen, who is an insurer of the policy did admit that the building, the barn was used in the business. And as a result, Judge Holland affirmatively stated that as a matter of law, the built the barn was used in the business. So now we have an irreconcilable position, Mr Kamen has said, it's not used in my business, and the court has said, that's not true. It was used in your business and I know that as a matter of law, and our courts have consistently held that, you know, a person when they speak or act intends the consequences of their actions. And in this case, we know why he did it. Because, as I was about to say, Mr. Kamen admitted at trial that based upon Mr. Wooley's statements that if the barn were used in his business, he wouldn't get paid for it, he wouldn't get the $21,000. He also knew that the barn was used in his business, he wouldn't get the $9,000 that country paid for demolition and debris removal. So, Mr. Kamen knew, and it's undisputed that he knew because he admitted it, that if he told the truth, that the barn was used in his business, it was going to cost him $30,000 because it wouldn't be covered. Well, that award was subject to remittance, right? It was, because Judge Holland said, the evidence is overwhelming. He said, as a matter of law, I conclude that you're using the barn in the business. Okay, so you're not going to pay him that money, right? Zero. Sure, but the idea of the insurance policy isn't that, ask for everything you want, and we just don't pay you on the lies we catch you on. The whole premise behind it is that if you make misrepresentations, you don't get any coverage. So let's get real simple here. What is it you want? I'd ask this court to reverse the trial court's order, grant Jano v. or in the alternative, at least send it back, remand the case for a new trial, because the evidence overwhelmingly suggests that Mr. Kamen made misrepresentations. I see that my time is up. If there's no further questions, I'll wait to finish in my rebuttal time. Mr. Del Medico. Your Honor, briefly, I agree with Justice O'Brien. I mean, there were five specific direct interrogatories asked to the jury, and all came back in the negative with regard to intentional acts, concealment, specifically, fraudulent conduct, all of them were answered in the negative. And insofar as that may be the case, but if the jury comes back and makes a finding, the earth is flat. I don't know that the court has to accept that because there's interrogatories. I would agree, Your Honor. However, I mean, they heard the evidence. They heard the testimony of Mr. Kamen, Ms. Kamen, of the agents of the insurance company. And even in Judge Holland's finding, he specifically says, this is not a finding by the court that plaintiff intentionally misrepresented that he was using the property for business based on his understanding of the policy, but rather is based on the court's interpretation of the policy language. And plaintiff's admission to trial. My client never made misrepresentations at trial. My client believed if the barn was being used in business, an example of that would be if he was an auto repairman and he repaired automobiles in his barn, and he represented that he wasn't doing that in the barn, then there would be a reason for the coverage not to apply. His understanding is, first and foremost, he stored business property in the barn, and they specifically cover business property that was stored in the barn as well. So it's kind of a catch-22 there with the language of the policy. And this was, at trial, it was greatly discussed through testimony by the parties, by the agents of the insurance company, of what, you know, what does that mean used in the business? And used in the business, my client, the jury found that him and Ms. Kamen, they didn't intentionally misrepresent any of those facts with regard to use of the barn. Insofar as the remittitor, my client accepted the trial court's remittitor to zero for the auxiliary private structure. And at this point in time, believes that the trial court's rulings on the judgment, notwithstanding the verdict as well as remittitor, should be affirmed. And that, you know, the damages as set forth in Judge Holland's opinion should stand. And what were those again, Mr. Delmedico? First and foremost, that the damages, the court grants defendants remittitor in part of $21,350.70 for the auxiliary structure to zero. And then personal property, $150,131.75 less $7,500 to $142,631.75. And then also the, for covered under the dwelling, my client was remodeling his home and the trial court affirmed the award of $27,355. That's for his personal property that was in the building, right? The $27,355 was for the property that he was used in remodeling property. Some of the property was adjacent to the barn. And some of it was actually in the barn as well at the time of the loss. Thank you. I have nothing further to it. Any other questions from the justice. I guess not. All right. Mr. Kitzinger rebuttal. Thank you. I was going to say the second unambiguous misrepresentation related to Mr. Kamen's finances. He was asked during the claims process. Have you ever fallen behind in the last five years in your mortgage payments? Obviously, to see if there was any financial distress or pressure to make misrepresentations or increase the claim. Mr. Kamen affirmatively said, no, I've always been current. We know that for a fact is false. In fact, his mortgage mortgagee filed suit to foreclose on the mortgage. He actually entered into a forbearance agreement. And once again, he threw his wife under the bus and said, well, she did that. But on cross-examination, he admitted, yeah, I did know all about this. I read it in the paper. I knew about it. And most importantly, I knew about the foreclosure before I made the representations to country that I had no financial issues. In fact, the. The following exchange occurred at trial with regard to this question, quote. So is it fair to say that then that in the statements you provided to country connection with your claim, you provide a country with false information about your financial wherewithal at the time? His answer, quote, yes. In other words, he admitted, I mean, he flat out admitted during the trial that he lied about his finances. In the years immediately preceding the fire and the unrebutted and uncontested and unchallenged testimony of countries, Robert Noda and the Special Investigation Unit investigator says, look, it's important. It's material to country for an insurer to know about an insured's financial status because it gives them a potential motive to inflate their claim, to to lie about the claim, just like Mr. Kamin did about the barn, which would have cost him thirty thousand dollars that he told the truth. So it's material. That's unchallenged. So we have. An uncontroverted admitted statement that, yes, Mr. Kamin lied about his financial status, that that statement was material to country's investigation and that it wasn't true. Well, doesn't that go really to the issue of arson? No, it goes. No, absolutely. It is an issue for our show, but it also goes to all. But your investigation, when there is a fire, also encompasses arson. So asking that question is material. It's material to any part of the claim, because in this case, it gave him a motive to misrepresent that he used the barn in his business. It gave him a motive to say he was only a painter, not a handyman. And all these other tools were just his personal items. So they're they're not limited to the twenty five hundred dollars. It gave motivation to misrepresent that all the things in the barn were his, not his, which turned out to be not true because they belonged to his brother and two friends. He made a slew of misrepresentations. And the point is, by inflating his claim and inflating the value of the items, by inflating the number of items or how much they are worth or their their actual cash value. All of those things are things that the insurance company is concerned about and wants to know, hey, do you have any financial reason or motive to misrepresent things to us? Yes or no. OK, so if that's found to be true, that misrepresentation, what happens to the policy and the coverage? It's voided. There is no if again, it comes down to the United States Supreme Court. So now we have a jury that said in special interrogatories, we we don't believe that to be the case. Right. Correct. But that's why we filed the motion. So now the judgment J.N.O.V. OK. Which was denied. Where was the error? Well, I could tell you one Judge Holland in quite clearly and intentionally did not even address any of the arguments in the motion for J.N.O.V. or new trial. If you read his order, I believe it's on page twelve, thirty two of the record. He flat out does not address either of the issues with regard to the barn being used in the business or the fraud, the misrepresentations regarding the financial condition. He just ignores them in his post trial order. The motion for J.N.O.V. a new trial specifically, just like the case here, is based on, in general, those two giant admitted misrepresentations that he misrepresented use of the barn in the business misrepresents financial condition. Judge Holland ignored those two things and instead engaged in a discussion about there was no misrepresentation with regard to the value of the items claimed. That wasn't what was presented to the court, though, in the motion. But curiously, he does. Judge Holland does go back and say, well, I do know he made a misrepresentation about the barn because we know as a matter of law, the barn was used in his business. So it's clear that Judge Holland is trying to be Solomon-like and kind of split the baby here. And he does that by avoiding the issue. What we're doing is asking this court not to avoid that issue. Look at, in particular, those two unrebutted, uncontested, overwhelming pieces of evidence that he made that Mr. came and made misrepresentations and it's and that J.N.O.V. is warranted or at the very least, a new trial is warranted. The point of all this is to correct the jury's mistakes. Again, I see that my time has expired. There's no further questions. I'm done. Any questions? No. Well, thank you, Counsel Balls, for your arguments in this matter this morning. You'll be taken under advisement in a written disposition trial issue and the court will stand in brief recess.